**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

Anthony Posey,

               Plaintiff,

    v.

Officer C. Perez, et al.,

               Defendants.

Case No. 2:24-cv-01675-CDS-DJA

**Order
and
Report and Recommendation**

Southern Desert Correctional Center inmate, Plaintiff Anthony Posey, submitted an application to proceed *in forma pauperis* and a complaint. (ECF Nos. 4, 5). The undersigned magistrate judge reconsiders Plaintiff's application and re-screens Plaintiff's first cause of action per the Honorable District Judge Cristina D. Silva's order. (ECF No. 10). Because the Court finds that Plaintiff's application is complete, it grants his application to proceed *in forma pauperis*. The Court re-screens Plaintiff's first cause of action and recommends dismissing certain of his claims with leave to amend, and dismissing others without leave to amend.

**I.     *In forma pauperis* application.**

Plaintiff has filed the forms required to proceed *in forma pauperis*. (ECF No. 4). Plaintiff's forms are complete and Plaintiff has shown an inability to prepay fees and costs or give security for them. So, the Court will grant Plaintiff's application to proceed *in forma pauperis*. (ECF No. 4).

**II.     Legal standard for screening.**

Upon granting an application to proceed *in forma pauperis*, courts additionally screen the complaint under § 1915(e). Federal courts are given the authority to dismiss a case if the action is legally "frivolous or malicious," fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2).

When a court dismisses a complaint under § 1915, the plaintiff should be given leave to amend the complaint with directions as to curing its deficiencies, unless it is clear from the face of the complaint that the deficiencies could not be cured by amendment. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of a complaint for failure to state a claim upon which relief can be granted. Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of Am.*, 232 F.3d 719, 723 (9th Cir. 2000). A properly pled complaint must provide a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Although Rule 8 does not require detailed factual allegations, it demands "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Papasan v. Allain*, 478 U.S. 265, 286 (1986)). The court must accept as true all well-pled factual allegations contained in the complaint, but the same requirement does not apply to legal conclusions. *Iqbal*, 556 U.S. at 679. Mere recitals of the elements of a cause of action, supported only by conclusory allegations, do not suffice. *Id.* at 678. Where the claims in the complaint have not crossed the line from conceivable to plausible, the complaint should be dismissed. *Twombly*, 550 U.S. at 570. Allegations of a *pro se* complaint are held to less stringent standards than formal pleadings drafted by lawyers. *Hebbe v. Pliler*, 627 F.3d 338, 342 & n.7 (9th Cir. 2010) (finding that liberal construction of *pro se* pleadings is required after *Twombly* and *Iqbal*).

Federal courts are courts of limited jurisdiction and possess only that power authorized by the Constitution and statute. *See Rasul v. Bush*, 542 U.S. 466, 489 (2004). Under 28 U.S.C. § 1331, federal courts have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." Cases "arise under" federal law either when federal law creates the cause of action or where the vindication of a right under state law necessarily turns on the construction of federal law. *Republican Party of Guam v. Gutierrez*, 277 F.3d 1086, 1088-89 (9th Cir. 2002). Whether federal-question jurisdiction exists is based on the "well-pleaded complaint rule," which provides that "federal jurisdiction exists only when a

1    federal question is presented on the face of the plaintiff's properly pleaded complaint."

2    *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). Under 28 U.S.C. § 1332(a), federal

3    district courts have original jurisdiction over civil actions in diversity cases "where the matter in

4    controversy exceeds the sum or value of $75,000" and where the matter is between "citizens of

5    different states." Generally speaking, diversity jurisdiction exists only where there is "complete

6    diversity" among the parties; each of the plaintiffs must be a citizen of a different state than each

7    of the defendants. *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996).

8    **III.    Screening Plaintiff's complaint.**

9        Plaintiff sues the Las Vegas Metropolitan Police Department ("LVMPD") Chief, John

10   Doe[1]; Instagram.com; the State of Nevada; LVMPD Officer C. Perez; LVMPD Detective C.

11   Savino; and LVMPD Detective M. Moore for damages.[2] Plaintiff's first cause of action, which

12   this Court re-screens, contains fourteen separate claims, which Plaintiff appears to bring against

13   all of the Defendants. (ECF No. 5 at 5). Liberally construing Plaintiff's complaint, these include:

14   (1) violation of his First Amendment right to freedom of speech; (2) warrantless search and

15   seizure in violation of the Fourth Amendment; (3) violation of Plaintiff's due process rights under

16   the Fifth Amendment; (4) cruel and unusual punishment in violation of the Eighth Amendment;

17   (5) violation of Plaintiff's due process rights under the Fourteenth Amendment; (6) violation of

18   the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030; (7) violation of the Electronic

19   Communications Protection Act ("ECPA"), 18 U.S.C. § 2510; (8) violation of the Wiretap Act,

20   18 U.S.C. § 2511; (9) violation of the ECPA, 18 U.S.C. § 2523; (10) violation of the Federal

21

22   [1] "Where the identity of an alleged defendant is not known prior to the filing of a complaint, the
     plaintiff should be given an opportunity through discovery to identify the unknown defendants,

23   unless it is clear that discovery would not uncover the identities, or that the complaint would be
     dismissed on other grounds" *Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999)

24   (internal quotations omitted) (cleaned up). So, Plaintiff's claims may proceed against LVMPD
     Chief Doe and Plaintiff may move to amend his complaint to name the correct individual once he

25   learns LVMPD Chief Doe's name.

26   [2] Plaintiff also sues his state-court counsel, Todd Leventhal and LVMPD Detective B. Lablane.
     However, Plaintiff does not include any claims against these Defendants in his first cause of

27   action. Because the Court rescreens Plaintiff's first cause of action only, it does not address these

28   Defendants.

1    Trade Commission Act ("FTCA"), 15 U.S.C. §§ 52, 54; (11) violation of Nevada Revised Statute

2    ("NRS") § 179.045 governing the issuance and contents of warrants; (12) violation of the

3    Controlling the Assault of Non-Solicited Pornography and Marketing Act ("CAN-SPAM Act"),

4    15 U.S.C. § 7707; (13) violation of NRS § 207.190, which makes coercion unlawful; and (14) the

5    Stored Communications Act ("SCA"), 18 U.S.C. § 2701.

6          Plaintiff alleges that, on December 25, 2020, Officer Perez pulled him over under the false

7    pretense that Plaintiff's registration was suspended.  (ECF No. 5 at 5).  Plaintiff asserts that

8    Officer Perez could not have known that his registration was suspended until after Officer Perez

9    pulled him over, and so Officer Perez did not have probable cause to pull him over.  (*Id.* at 5-7).

10   Plaintiff claims that Officer Perez really stopped him because Officer Perez observed Plaintiff—

11   an older Black man—traveling with a young white woman.  (*Id.*).  Plaintiff claims that the arrest

12   report following this interaction falsely claimed that Officer Perez pulled Plaintiff over because

13   his registration was suspended, when really, Officer Perez could not have known that when he

14   decided to stop Plaintiff.  (*Id.*).  Plaintiff alleges that it was a violation of his Fifth Amendment

15   due process rights for Officer Perez to withhold this exculpatory evidence from the arrest report

16   and a violation of his Eighth Amendment rights for Officer Perez to make false statements in the

17   report.  (*Id.*).  Plaintiff adds that Officer Perez violated 18 U.S.C. § 1030 by putting the false

18   statements into the government computer system via the arrest report.  (*Id.*).

19         After Officer Perez pulled them over, Officer Perez requested both Plaintiff and his

20   passenger, A.J.'s IDs.  (*Id.*).  After looking at A.J.'s ID, Officer Perez let her go and she walked

21   away, carrying her and Plaintiff's new puppy.  (*Id.*).  Plaintiff asserts that the arrest report failed

22   to include the fact that Officer Perez initially let A.J. go.  (*Id.*).  Officer Perez then placed Plaintiff

23   under arrest, informing him that his plates were suspended and that Plaintiff had failed to register

24   as a felon.  (*Id.*).  Plaintiff told Officer Perez that he still had one month to renew his plates and, at

25   the time, there was a one-month waiting list for the DMV given the Covid-19 pandemic.  (*Id.*).

26   But Officer Perez did not listen and did not include this fact in the arrest report.  (*Id.* at 6-7).

27   Instead, Officer Perez placed Plaintiff in the police car and arranged for Plaintiff's car to be

28   towed.  (*Id.*).  Plaintiff asserts that there was no need to tow his car because he had stopped in a

1  Walmart parking lot, which is private property. (*Id.*). Plaintiff asserts that this was a warrantless
2  search and seizure of his vehicle. (*Id.*).

3          While riding in Officer Perez's police car, Plaintiff repeated to Officer Perez that he still
4  had a month to renew his plates and added that his felony was over seven years old, so he did not
5  need to register. (*Id.*). Officer Perez then called the LVMPD Chief—who Plaintiff names as a
6  "John Doe" Defendant—who confirmed that Plaintiff did not have to register as a felon and that
7  his plates were not suspended. (*Id.*). So, Officer Perez asked the Chief "what tickets do I give
8  [Plaintiff]?" (*Id.*). The Chief responded, "just come down to the department." (*Id.*). After
9  overhearing this conversation, Plaintiff asked "what tickets are you arresting me for?" (*Id.*).
10 Officer Perez simply responded that Plaintiff would "get them in booking." (*Id.* at 8). At
11 booking, Plaintiff received misdemeanor tickets, and an officer—who Plaintiff does not name—
12 told him that he should not have been arrested for the tickets. (*Id.* at 7-8). Plaintiff was released
13 that night. (*Id.*). Plaintiff asserts that LVMPD Chief Doe violated his Fifth Amendment due
14 process rights by requiring Officer Perez to bring Plaintiff into the department. (*Id.* at 8).

15         Back at the scene, after Officer Perez arrested Plaintiff, another officer approached A.J.
16 while she was waiting for a ride and asked to search her purse, which search Plaintiff asserts was
17 improper given that A.J. had been free to leave. (*Id.* at 8-9). The officer found medication
18 without A.J.'s name on it and discovered that her license was fake. (*Id.*). The officers later
19 discovered that A.J. was reported as a missing juvenile out of Arizona. (*Id.*). Plaintiff adds that
20 the arrest report stated that A.J. was possibly involved in prostitution given her provocative
21 clothing and company of Plaintiff, a much older man. (*Id.*). Plaintiff alleges that this was a false
22 statement because A.J. was dressed in "nice clothing, holiday outfit," and because Officer Perez
23 originally believed that A.J. was an adult, which is why he let her go. (*Id.*). Plaintiff adds that, if
24 Officer Perez really believed A.J. was a minor, he would have notified the LVMPD Vice Section,
25 and would have arrested Plaintiff for more than just a suspended registration. (*Id.*). Plaintiff
26 asserts that the officer's search of A.J.'s purse was a "general rummaging" for incriminating
27 evidence. (*Id.*). Plaintiff adds that officers had no reason to believe A.J. was involved in
28 prostitution because her and Plaintiff were not in the area of any known prostitution, hotels, or

1    strip clubs and, when asked where she and Plaintiff were going, she responded that they were

2    food shopping and had a grocery list to prove it. (*Id.*). Additionally, A.J. had their puppy with

3    them. (*Id.*). So, Plaintiff alleges that the officers had no probable cause to stop A.J. a second

4    time and violated her Fourth, Fifth, and Eighth Amendment rights by doing so. (*Id.*).

5         Plaintiff alleges that A.J. was then arrested and Detectives Savino and Moore met with her

6    to investigate the prostitution charges. (*Id.* at 10). Plaintiff asserts that A.J. testified at Plaintiff's

7    preliminary hearing that Detectives Savino and Moore coerced her into letting them search her

8    cell phone, telling her that if she did not, they would not feed or release her. (*Id.*). Plaintiff

9    alleges that this coercion was in violation of NRS § 207.190(1)(c) and that the search of her

10   cellphone was improper without a warrant. (*Id.* at 10-11). Plaintiff adds that the officers violated

11   A.J.'s First Amendment right to freedom of speech; the ECPA; the SCA; the CFAA; NRS

12   § 207.190; NRS § 179.045; the CAN-SPAM Act; the Fourth Amendment; and the Eighth

13   Amendment by coercing her into giving consent to search her cellphone without obtaining a

14   warrant. (*Id.* at 11-12). Plaintiff alleges that the search resulted in the detectives accessing A.J.'s

15   Instagram account. (*Id.* at 12). Detectives then used the content of that account to form the basis

16   of their affidavit for a search warrant into Plaintiff's Instagram account. (*Id.*). The search

17   warrant was granted on December 26, 2020, the same day Plaintiff was released from jail. (*Id.* at

18   12). Plaintiff attaches a copy of the police report which shows that Instagram responded to the

19   warrant on December 28, 2020. (ECF No. 5-1 at 4). Plaintiff asserts that Instagram failed to

20   notify him about the search warrant. (ECF No. 5 at 12). Plaintiff adds that the warrant violated

21   his Fifth Amendment due process rights and his Fourth Amendment rights because Detectives

22   Savino and Moore used coerced information to form the basis for it. (*Id.* at 12-13). Plaintiff

23   alleges that Defendants also violated the ECPA; the Wiretap Act; the CFAA; the SCA; and the

24   CAN-SPAM Act by "knowingly, intentionally access[ing] text messages, picture[s], and video,

25   electronic mail" without Plaintiff's authorization and without a proper search warrant. (*Id.*).

26   After Plaintiff was released, he called A.J.'s mother and various law enforcement agencies to find

27   out where she went. (*Id.* at 12, 15). He learned through a call with a 911 operator that A.J. was

28   minor and that their puppy was in the pound. (*Id.* at 15).

On December 30, 2020, Plaintiff was arrested for sex trafficking a minor. (*Id.* at 13). Plaintiff agreed to speak with Detectives Savino and Moore after his arrest, and asserts that he provided exculpatory evidence to show that he was innocent. (*Id.* at 14). He told the detectives that he did not know and could not have known that A.J. was a minor because her fake Arizona ID stated that she was twenty-two. (*Id.*). Additionally, A.J. worked as an exotic dancer at a location where only people aged twenty-one and over could enter and A.J. was depicted on several dating sites, Instagram, and Facebook as a twenty-two-year-old. (*Id.*). Plaintiff was also friends with A.J.'s mother on Facebook, where A.J. was listed as a twenty-two-year-old, and A.J. had her own place where she lived with friends. (*Id.*). Plaintiff also pointed out that Officer Perez looked at A.J.'s fake ID and allowed her to leave on December 25, 2020, indicating that the ID was not so obviously fake such that Plaintiff erred in relying on it. (*Id.*). Plaintiff also told the detectives that he had spoken on a recorded line with a 911 operator when he learned for the first time that A.J. was a minor, so the detectives should have attempted to find the call as exculpatory evidence. (*Id.*). Plaintiff adds that he never trafficked A.J. because he never took money from her. (*Id.* at 15). Instead, Plaintiff helped support her financially. (*Id.*). Plaintiff states that none of his exculpatory statements made it into the arrest report, which failure Plaintiff asserts violated his First, Fifth, and Fourteenth Amendment rights. (*Id.* at 16). He also asserts that the Defendants published the false story that Plaintiff was a sex trafficker to various news outlets, causing Plaintiff to lose customers from his business of selling smart home devices and services. (*Id.* at 16-17). The investigation culminated in Case No. 21-C-355585-1 in which Plaintiff was charged with soliciting a child for prostitution and child abuse, neglect, or endangerment.[3] Those charges were dismissed and the case was dismissed on August 9, 2021.

---

[3] A court can take judicial notice of material that is referenced extensively or relied upon by the complaint, as well as matters in the public record. *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006); *see also Bennett v. Medtronic, Inc.*, 285 F.3d 801, 803 n.2 (9th Cir. 2022) (courts may take judicial notice of documents on file in federal or state courts). The Court takes judicial notice of *State of Nevada v. Anthony Posey*, Case No. C-21-355585-1, the docket for which reveals that Plaintiff was charged with these crimes and that the case and the charges were dismissed.

1    **A.    *Plaintiff's claims against the State of Nevada.***

2    The Court recommends dismissing Plaintiff's claims against the State of Nevada without

3    leave to amend.  The Eleventh Amendment provides that "[t]he Judicial power of the United

4    States shall not be construed to extend to any suit in law or equity, commenced or prosecuted

5    against one of the United States by Citizens of another State, or by Citizens or Subjects of any

6    Foreign State."  U.S. Const. amend. XI.  The amendment "bars a citizen from bringing a suit

7    against his own state in federal court."  *Micomonaco v. Washington*, 45 F.3d 316, 319 (9th Cir.

8    1995) (citing *Hans v. Louisiana*, 134 U.S. 1, 3 (1890)).  As to states and stage agencies, "[t]his

9    jurisdictional bar applies regardless of the nature of the relief sought."  *Pennhurst State Sch. &*

10   *Hosp. v. Halderman*, 465 U.S. 89, 100 (1984), *superseded by statute on other grounds*.  A

11   plaintiff can overcome the Eleventh Amendment bar, however, if the state has consented to waive

12   its immunity or if Congress has abrogated the state's immunity.  *Vasquez v. Washington Dep't of*

13   *Veterans Affairs*, 746 F.Supp.3d 1011, 1018 (W.D. Wash. 2024) (citing *Micomonaco*, 45 F.3d at

14   319).  In determining whether claims are barred by the Eleventh Amendment, each claim is

15   examined separately.  *See Pennhurst*, 465 U.S. at 121.

16   Nevada has waived its sovereign immunity under some circumstances.  *See* NRS

17   § 41.031.  But it has explicitly preserved Eleventh Amendment immunity.  *See* NRS § 41.031(3).

18   "Ninth Circuit cases interpreting § 41.031 have unanimously concluded that Nevada's retention

19   of 'Eleventh Amendment immunity' bars *all* actions against Nevada in federal court, including

20   those brought by Nevada residents."  *Carey v. Nevada Gaming Control Bd.*, 279 F.3d 873, 877

21   (9th Cir. 2022) (emphasis in original) (compiling cases).  This Eleventh Amendment immunity

22   also bars state law claims brought in federal court against Nevada.  *See Central Reserve Life of*

23   *North America Ins. Co. v. Struve*, 852 F.2d 1158, 1161 (9th Cir. 1988).  Because the Eleventh

24   Amendment bars all actions against Nevada in federal court, the Court recommends dismissing

25   all of Plaintiff's claims against the State of Nevada without leave to amend.

26   **B.    *Plaintiff's claims brought on A.J.'s behalf.***

27   The Court recommends dismissing Plaintiff's claims brought on A.J.'s behalf.  Plaintiff

28   alleges that Defendants violated A.J.'s constitutional rights, which violations resulted in

1    Defendants obtaining an illegal search warrant into his Instagram account.  While Plaintiff can

2    sue over violations of his own rights, he cannot sue Defendants for violations of A.J.'s rights.  *See*

3    Fed. R. Civ. P. 17(a)(1) ("An action shall be prosecuted in the name of the real party in interest");

4    *Farias v. Lewis*, 247 Fed.Appx. 894, 894 (9th Cir. 2007) (affirming a district court's denial of an

5    action because the amended complaint was based on alleged violations of the plaintiff's wife's

6    constitutional rights).  So, to the extent that Plaintiff attempts to bring claims against Defendants

7    based on their violations of A.J.'s constitutional rights, the Court recommends dismissing these

8    claims without leave to amend.

9            **C.**        ***Plaintiff's First Amendment free speech claim.***

10           The Court recommends dismissing Plaintiff's First Amendment free speech claim with

11   leave to amend.  Plaintiff alleges that Defendants violated his First Amendment freedom of

12   speech rights by obtaining an illegal search warrant into his online communications.  Plaintiff

13   does not specify the Defendants against whom he brings this claim, but the Court liberally

14   construes his complaint as brining this claim against Detectives Savino and Moore, because they

15   were the detectives who sought the search warrant.  However, Plaintiff has not alleged sufficient

16   facts to establish that he suffered a constitutional violation.

17           To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a violation of rights

18   protected by the Constitution or created by federal statute proximately caused by conduct of a

19   person acting under color of state law.  *See Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir.

20   1991).  The First Amendment does not guarantee absolute freedom of speech.  *See Bd. of Cnty.*

21   *Comm'rs v. Umbehr*, 518 U.S. 668, 675 (1996).  In fact, several kinds of speech are not

22   constitutionally protected.  *See, e.g.*, *Counterman v. Colorado*, 600 US. 66, 69 (2023) (explaining

23   that "[t]rue threats of violence are outside the bounds of First Amendment protection and

24   punishable as crimes"); *R.A.V. v. City of St. Paul*, 505 U.S. 377, 383-38 (1992) (explaining that

25   the freedom of speech referred to by the First Amendment does not include obscenity,

26   defamation, and fighting words).  Consequently, to state a claim for a violation of freedom of

27   speech, a complaint must include facts demonstrating that the speech in question is

28

1    constitutionally protected.  *See Fielder v. Murphy*, 359 F.Supp.2d 1055, 1057 (D. Haw. 2005)

2    (citing *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1071 (9th Cir. 2004)).

3        Here, Plaintiff has not identified the speech in question.[4]  He has also not demonstrated

4    that the speech in question is constitutionally protected.  So, he has not alleged how Detectives

5    Savino and Moore have violated his First Amendment freedom of speech rights and the Court

6    recommends dismissing this claim with leave to amend.

7        **D.    *Plaintiff's Fourth Amendment unreasonable search and seizure claim.***

8        The Court recommends dismissing this claim with leave to amend because the statute  of

9    limitations has passed and Plaintiff has not alleged that it was tolled.  Plaintiff alleges that

10   Defendants violated his Fourth Amendment rights by conducing unreasonable searches and

11   seizures.  Liberally construing Plaintiff's complaint, Plaintiff alleges that this occurred on three

12   occasions: (1) when Officer Perez pulled him over and arrested him for the false pretense that

13   Plaintiff's registration was suspended; (2) when Officer Perez arranged for Plaintiff's car to be

14   towed; and (3) when Defendants Savino and Moore used improperly obtained information to

15   form the basis for their affidavit in support of a search warrant into Plaintiff's Instagram account.

16       A claim is subject to dismissal under Federal Rule of Civil Procedure 12(b)(6) on the

17   ground that the statute of limitations has expired "when the running of the statute is apparent on

18   the face of the complaint" and "it appears beyond doubt that the plaintiff can prove no set of facts

19   that would establish the timeliness of the claim."  *Von Saher v. Norton Simon Museum of Art at*

20   *Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010).  The applicable statute of limitations for a cause of

21   action under 42 U.S.C. § 1983 is the statute of limitations established by the forum state for

22   personal injury torts.  *Wallace v. Kato*, 549 U.S. 384, 387 (2007).  In Nevada, that is two years.

23   *See* NRS § 11.190(4)(e).  Federal law determines when a cause of action accrues and the statute

24   of limitations begins to run for a § 1983 claim.  *Rosales-Martinez v. Palmer*, 753 F.3d 890, 895

25

26   ─────────────────────

27   [4] There also appears to be a statute of limitations issue with Plaintiff's First Amendment freedom
     of speech claim.  However, because Plaintiff does not identify the speech at issue or the conduct
     that he asserts violated his rights, the Court cannot adequately assess whether and when the

28   statute of limitations passed.  So, it does not address this claim on that ground.

1    (9th Cir. 2014). But state law, to the extent it is not inconsistent with federal law, governs tolling.

2    *See Jones v. Blanas*, 393 F.3d 918, 927 (9th Cir. 2004). A § 1983 action challenging a conviction

3    or sentence does not exist until the conviction or sentence is invalidated. *Rosales-Martinez*, 753

4    F.3d at 895 (citing *Heck v. Humphrey*, 512 U.S. 477, 489). So, if a judgment in favor of the

5    plaintiff would *necessarily* imply the invalidity of a conviction or sentence, then the cause of

6    action does not accrue until that conviction or sentence has been invalidated. *Id.* (emphasis

7    added).

8          Here, the statute of limitations for this claim appears to have run, at the latest, in August

9    of 2023, two years after his criminal case was dismissed on August 9, 2021, and at the earliest, in

10   December of 2022, two years after Officer Perez pulled him over. But Plaintiff did not file his

11   initiating documents in this case until September 10, 2024. And Plaintiff does not allege facts

12   that would demonstrate tolling. So, the Court recommends dismissing this claim with leave to

13   amend.

14         **E.    *Plaintiff's Fifth Amendment due process claim.***

15         The Court recommends dismissing Plaintiff's Fifth Amendment due process claim

16   without leave to amend because his claim is properly brought under the Fourteenth Amendment.

17   Plaintiff alleges that Defendants—each of whom are state actors—violated his Fifth Amendment

18   due process rights in various ways. However, Plaintiff's claims more appropriately arise under

19   the Fourteenth Amendment, because "[t]he Fifth Amendment prohibits the *federal government*

20   from depriving persons of due process, while the Fourteenth Amendment explicitly prohibits

21   deprivations without due process by the *several States*." *Castillo v. McFadden*, 399 F.3d 993,

22   1002 n.5 (9th Cir. 2005) (emphasis added). So, the Court recommends dismissing Plaintiff's

23   Fifth Amendment claims without leave to amend.

24         **F.    *Plaintiff's Eighth Amendment cruel and unusual punishment claim.***

25         The Court recommends dismissing Plaintiff's Eighth Amendment cruel and unusual

26   punishment claim without leave to amend because he has not alleged any facts related to his

27   confinement as a post-conviction inmate. Plaintiff alleges that Defendants violated his Eighth

28   Amendment rights in various ways. The Eighth Amendment protects inmates from inhumane

methods of punishment and conditions of confinement. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006). However, if the claim is pursued by a pretrial detainee who is not convicted, the claim arises under the Fourteenth Amendment's due process clause. *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979) (explaining that, under the due process clause, a pretrial detainee may not be punished prior to conviction). Plaintiff has not alleged a colorable Eighth Amendment claim because he has not alleged any facts related to his confinement as a post-conviction inmate. Additionally, even if the Court were to liberally construe Plaintiff's claim as one for cruel and unusual punishment in violation of the due process clause of the Fourteenth Amendment, Plaintiff does not allege any facts related to the conditions of his confinement as a pretrial detainee. So, the Court recommends dismissing Plaintiff's Eighth Amendment cruel and unusual punishment claims without leave to amend.

### G.      Plaintiff's Fourteenth Amendment due process claim.

The Court recommends dismissing Plaintiff's Fourteenth Amendment due process claim with leave to amend. Plaintiff alleges that Officer Perez violated his Fourteenth Amendment due process rights by omitting or putting false information in the arrest report following Officer Perez's arrest of Plaintiff on December 25, 2020. Plaintiff also alleges that LVMPD Chief Doe violated his Fourteenth Amendment due process rights by requiring Officer Perez to bring Plaintiff to the department, even though he knew that Officer Perez had no reason to arrest Plaintiff.

However, again, the statute of limitations for this claim appears to have run. Plaintiff's allegations related to the false information Officer Perez put in the arrest report and LVMPD Chief Doe requiring Officer Perez to bring Plaintiff to the department do not appear to necessarily imply the invalidity of Plaintiff's later-dismissed charges. So, Plaintiff's claims would have accrued on December 25, 2020, and the statute of limitations would have expired two years later, in December of 2022. Even if the Court were to construe the statute of limitations as running from the date Plaintiff's charges were dismissed, the statute of limitations would have run in August of 2023. And because Plaintiff does not allege any facts about how his claims were tolled, the Court recommends dismissing this claim with leave to amend.

1

### H.    Plaintiff's Computer Fraud and Abuse Act, 18 U.S.C. § 1030(g) claim.

The Court recommends dismissing Plaintiff's CFAA claim with leave to amend.  Plaintiff alleges that Officer Perez violated the CFAA by placing false information into the police database.  He also alleges that Detectives Savino and Moore violated the CFAA by obtaining Plaintiff's online information through an improperly obtained warrant and that Instagram violated the CFAA by providing that information under that warrant.  The CFAA is a federal statute was originally enacted to address hackers and that "subjects to criminal liability anyone who 'intentionally accesses a computer without authorization or exceeds authorized access,' and thereby obtains computer information."  *Van Buren v. United States*, 593 U.S. 374, 379 (2021) (citing 18 U.S.C. § 1030(a)(2)); *see United States v. Nosal*, 844 F.3d 1024, 1032 (9th Cir. 2016). The CFAA covers any information from any computer "used in or affecting interstate or foreign commerce or communication" and so applies to all information from all computers that connect to the internet.  18 U.S.C. § 1030(e)(2)(B); *Van Buren*, 593 U.S. at 379.  The CFAA also gives rise to civil liability, allowing a plaintiff in a civil suit to recover for "damage" or "loss."  18 U.S.C. § 1030(g); *Van Buren*, 593 U.S. at 391.

However, the private-cause-of-action provision of the CFAA has a two-year statute of limitations.  *See* 18 U.S.C. § 1030(g) ("[n]o action may be brought under this subsection unless such action is begun within 2 years of the date of the act complained of or the date of the discovery of the damage.").  Plaintiff alleges that the warrant into his Instagram account was granted on December 26, 2020, and that Instagram provided detectives the information on December 28, 2020.  It is not clear when Plaintiff learned of the warrant, but even if the Court were to consider the statute of limitations as running from the date Plaintiff's criminal charges were dismissed, the statute of limitations would still have run in August of 2023.  So, the Court recommends dismissing Plaintiff's CFAA claim with leave to amend.

### I.    Plaintiff's Electronic Communications Protection Act, 18 U.S.C. § 2510 claim.

The Court recommends dismissing Plaintiff's ECPA claim arising under 18 U.S.C. § 2510 without leave to amend.  Plaintiff alleges that Defendants violated 18 U.S.C. § 2510, a portion of the Electronic Communications Protection Act of 1986.  That Act protects wire, oral, and

1  electronic communications while those communications are being made, are in transit, and when

2  they are stored on computers.  *See Electronic Communications Privacy Act of 1986 (ECPA), 18*

3  *U.S.C. § 2510-2523*, UNITED STATES DEPARTMENT OF JUSTICE,

4  https://bja.ojp.gov/program/it/privacy-civil-liberties/authorities/statutes/1285 (last visited March

5  5, 2025).  However, 18 U.S.C. § 2510 is simply the definition section of the Act.  So, it does not

6  create a private right of action.  The Court thus recommends dismissing this claim without leave

7  to amend.

8       **J.       *Plaintiff's Wiretap Act, 18 U.S.C. § 2511 claim.***

9       The Court recommends dismissing Plaintiff's Wiretap Act claim with leave to amend.

10  Plaintiff alleges that Detectives Savino and Moore violated the Wiretap Act by intercepting

11  communications he had through Instagram under an unlawful warrant and that Instagram violated

12  the Act by providing the detectives those communications.  The Wiretap Act, 18 U.S.C. § 2511,

13  is a provision of the ECPA.  That provision makes it unlawful for any person to "intentionally

14  intercept[ ], endeavor[ ] to intercept, or procure[ ] any other person to intercept or endeavor to

15  intercept, any wire, oral, or electronic communication."  18 U.S.C. § 2511(1)(a).  Another portion

16  of the ECPA, 18 U.S.C. § 2520, provides a private right of action for "any person

17  whose…electronic communication is intercepted…or intentionally used in violation of [18 U.S.C.

18  §§ 2510-2523]" against the person who intercepted, disclosed, or intentionally used the electronic

19  communication.  18 U.S.C. § 2520.  The private right of action created by § 2520 applies to

20  violations of § 2511(a).  *See* 18 U.S.C. § 2520(a); *DIRECTV, Inc. v. Pahnke*, 405 F.Supp.2d

21  1182, 1188-89 (E.D. Cal. 2005).  Liability under § 2011 requires proof that the defendant

22  intentionally intercepted an electronic communication, that information was obtained from the

23  intercepted communication, and that the defendant knew or should have known that interception

24  was illegal.  *DIRECTV*, 405 F.Supp.2d at 1188-89 (citing *Forsyth v. Barr*, 19 F.3d 1527 (5th Cir.

25  1994)).  A plaintiff may bring a civil action for violation of the Wiretap Act against individuals

26  who violate the Act in reliance on an unlawful warrant.  *See Villa v. Maricopa County*, 865 F.3d

27  1224, 1299 (9th Cir. 2017) (explaining that a person whose conversations were unlawfully

28  intercepted by law enforcement under a warrant had standing to seek damages under 18 U.S.C.

§ 2520(a)).  However, 18 U.S.C. § 2520(e) creates a two-year statute of limitations.  *See* 18 U.S.C. § 2520(e) ("[a] civil action under this section may not be commenced later than two years after the date upon which the claimant first has a reasonable opportunity to discover the violation.").

Here, Plaintiff has not alleged when he discovered that Detectives Savino and Moore and Instagram had accessed his communications.  However, and again, even if the Court were to consider that Plaintiff did not learn that they had done so until his criminal charges were dropped, the statute of limitations would have run on these claims in August of 2023.  Because Plaintiff does not allege whether his claim has been tolled, the Court recommends dismissing Plaintiff's Wiretap Act claim with leave to amend.

### K.    Plaintiff's Electronic Communications Protection Act, 18 U.S.C. § 2523 claim.

The Court recommends dismissing Plaintiff's ECPA claim arising under 18 U.S.C. § 2523 with leave to amend.  Again, 18 U.S.C. § 2520, provides a private right of action for "any person whose…electronic communication is intercepted…or intentionally used in violation of [18 U.S.C. §§ 2510-2523]" against the person who intercepted, disclosed, or intentionally used the electronic communication.  18 U.S.C. § 2520.  But that provision also creates a two-year statute of limitations, which appears on the face of the complaint to have already run.

### L.    Plaintiff's Federal Trade Commission Act, 15 U.S.C. § 52, § 54 claims

The Court recommends dismissing both of Plaintiff's FTCA claims without leave to amend.  Plaintiff alleges that Defendants violated 15 U.S.C. § 52, which prohibits dissemination of false advertisements.  Plaintiff also alleges that Defendants violated 15 U.S.C. § 54, which provides penalties for false advertising.  Plaintiff claims that Defendants violated these statutory provisions by providing the story of his arrest and charges to news outlets.  15 U.S.C. § 52 and § 54 are part of the FTCA.  However, "[t]he protection against unfair trade practices afforded by the Act vests initial remedial power solely in the Federal Trade Commission."  *Carlson v. Coca-Cola Co.*, 483 F.2d 279, 280 (9th Cir. 1973).   Because the FTCA does not provide for private enforcement, the Court recommends dismissing these claims without leave to amend.

1

    **M.      *Plaintiff's Nevada Revised Statute § 179.045 claim.***

2            The Court recommends dismissing Plaintiff's NRS § 179.045 claim without leave to

3  amend.  Plaintiff alleges that Defendants violated NRS § 179.045, which governs the issuance

4  and contents of warrants, sealing information upon which a warrant is based, and the time for

5  serving a warrant.  However, the statute does not explicitly create any private right of action.

6  And Plaintiff's claims that Defendants wrongfully obtained a warrant already arise under the

7  Fourth and Fourteenth Amendment.  So, the Court recommends dismissing this claim without

8  leave to amend as redundant.

9

    **N.      *Plaintiff's Controlling the Assault of Non-Solicited Pornography and Marketing Act, 15 U.S.C. § 7707 claim.***

10

11           The Court recommends dismissing Plaintiff's CAN-SPAM Act claim with leave to

12  amend.  Plaintiff alleges that Defendants violated 15 U.S.C. § 7707, which is part of a statutory

13  scheme providing a code of conduct to regulate commercial email messaging practices known as

14  the CAN-SPAM Act.  *See* 15 U.S.C. § 7701 (congressional findings and policy); *see Gordon v.*

15  *Virtumundo, Inc.*, 575 F.3d 1040, 1045, 1048 (9th Cir. 2009).  However, the section of the Act

16  Plaintiff invokes, 15 U.S.C. § 7707, describes the effect of the statutory scheme on other laws.  It

17  does not create a private cause of action.  While Section § 7706(g) of the CAN-SPAM Act creates

18  a limited private right of action, it limits that private right of action to providers of internet access

19  services.  *See Gordon*, 575 F.3d at 1048; *see* 15 U.S.C. § 7706(g) ("[a] provider of Internet access

20  service adversely affected by a violation [of the Act]…may bring a civil action…").  Plaintiff

21  alleges that he sells products, including internet services, for certain companies.  (ECF No. 5 at

22  16-17).  This attenuated connection to providing internet services likely does not make Plaintiff

23  an "internet service provider" for the purposes of the CAN-SPAM Act.  *See Gordon*, 577 F.3d at

24  1051-53.  But even if it did, Plaintiff has not alleged how or when Defendants violated the CAN-

25  SPAM Act.  Because it is possible Plaintiff could amend his complaint to assert facts sufficient to

26  establish a CAN-SPAM Act claim, the Court thus recommends dismissing Plaintiff's claim under

27  15 U.S.C. § 7707 with leave to amend.

28

1

        **O.      *Plaintiff's Nevada Revised Statute § 207.190 claim.***

2          The Court recommends dismissing Plaintiff's NRS § 207.190 claim with leave to amend.

3    Plaintiff alleges that Detectives Savino and Moore violate NRS § 207.190, which, in relevant

4    part, makes it unlawful for a person to deprive a person of any tool, implement, or clothing with

5    the intent to compel another to do or abstain from doing an act which the other person has a right

6    to do or abstain from doing.  *See* NRS § 207.190(1)(b).  Plaintiff bases this claim on his allegation

7    that Detectives Savino and Moore coerced A.J. into letting them search her cell phone.  However,

8    this claim fails for two reasons.  First, NRS § 207.190 imposes criminal penalties and does not

9    explicitly provide for a private right of action.  And Plaintiff makes no showing that the statute

10   impliedly contains a private right of action, which actions are rarely implied under criminal

11   statutes.  *Abcarian v. Levine*, 972 F.3d 1019, 1026 (9th Cir. 2020).  Second, Plaintiff does not

12   allege that Detectives Savino and Moore coerced him, but rather that they coerced A.J.  And as

13   addressed above, Plaintiff cannot bring this claim on A.J.'s behalf.  *See* Fed. R. Civ. P. 17(a)

14   ("Every action shall be prosecuted in the name of the real party in interest").  However, because it

15   is possible that Plaintiff could allege facts showing that NRS § 207.190 creates a private right of

16   action and Defendants violated the statute by coercing Plaintiff, the Court recommends

17   dismissing Plaintiff's NRS § 207.190 claim with leave to amend.

18         **P.      *Plaintiff's Stored Communications Act, 18 U.S.C. § 2701 claim.***

19         The Court recommends dismissing Plaintiff's SCA claim with leave to amend because the

20   statute of limitations has passed.  Plaintiff references the SCA, but does not indicate what section

21   of that Act he is invoking.  Liberally construing Plaintiff's complaint, it appears that he is

22   invoking 18 U.S.C. § 2701(a).

23         As part of the ECPA, the SCA creates criminal and civil liability for certain unauthorized

24   access to stored communications and records.  *See* 18 U.S.C. § 2701; *see* 18 U.S.C. § 2707; *see*

25   *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 874, 879 (9th Cir. 2002).  The SCA creates a

26   private right of action against anyone who "(1) intentionally accesses without authorization a

27   facility through which an electronic communication service is provided; or (2) intentionally

28   exceeds an authorization to access that facility; and thereby obtains, alters, or prevents authorized

1  access to a wire or electronic communication while it is in electronic storage in such system."  18

2  U.S.C. § 2701(a); *see id.* § 2707 (creating a private right of action).  An "electronic

3  communication service" is any service which provides to users thereof the ability to send and

4  receive wire or electronic communications."  18 U.S.C. § 2510(15).  However, 18 U.S.C. § 2707

5  also creates a two-year statute of limitations.  *See* 18 U.S.C. § 2707(f) ("[a] civil action under this

6  section may not be commenced later than two years after the date upon which the claimant first

7  discovered or had a reasonable opportunity to discover the violation.

8        Plaintiff alleges that Detectives Savino and Moore and Instagram accessed Instagram's

9  databases without Plaintiff's authorization and under the authority of a wrongfully obtained

10  warrant.  However, Plaintiff's SCA claim ran at the latest in August of 2023.  So, the Court

11  recommends dismissing Plaintiff's SCA claim with leave to amend.

12

13                          **<u>ORDER</u>**

14        **IT IS THEREFORE ORDERED** that Plaintiff's application to proceed *in forma*

15  *pauperis* (ECF No. 4) is **granted**.  Plaintiff will **not** be required to pay an initial installment fee.

16  Nevertheless, the full filing fee will still be due, pursuant to 28 U.S.C. § 1915, as amended by the

17  Prison Litigation Reform Act.  The movant herein is permitted to maintain this action to

18  conclusion without the necessity of prepayment of fees or costs or the giving of security therefor.

19        **IT IS FURTHER ORDERED** that, pursuant to 28 U.S.C. § 1915, as amended by the

20  Prison Litigation Reform Act, the Nevada Department of Corrections will forward payments from

21  the account of **<u>Anthony Posey, Inmate No. 1249244</u>**, to the Clerk of the United States District

22  Court, District of Nevada, 20% of the preceding month's deposits (in months that the account

23  exceeds $10.00) until the full $350 filing fee has been paid for this action.  The Clerk of Court is

24  kindly directed to send a copy of this order to the Finance Division of the Clerk's Office.  The

25  Clerk of Court is also kindly directed to send a copy of this order to the attention of **Chief of**

26  **Inmate Services for the Nevada Department of Corrections** at P.O. Box 7011, Carson City,

27  NV 89702.

28

**IT IS FURTHER ORDERED** that, even if this action is dismissed, or is otherwise unsuccessful, the full filing fee will still be due, pursuant to 28 U.S.C. § 1915, as amended by the Prison Litigation Reform Act.

**IT IS FURTHER ORDERED** that the Clerk of Court is kindly directed to send Plaintiff a copy of this order and report and recommendation.

## RECOMMENDATION

**IT IS RECOMMENDED** that the following claims be dismissed with leave to amend:

- Plaintiff's First Amendment freedom of speech claim.
- Plaintiff's Fourth Amendment unreasonable search and seizure claim.
- Plaintiff's Fourteenth Amendment due process claims.
- Plaintiff's Computer Fraud and Abuse Act, 18 U.S.C. § 1030 claim.
- Plaintiff's Wiretap Act, 18 U.S.C. § 2511 claim.
- Plaintiff's Electronic Communications Protection Act, 18 U.S.C. § 2523 claim.
- Plaintiff's Controlling the Assault of Non-Solicited Pornography and Marketing Act, 15 U.S.C. § 7707 claim.
- Plaintiff's Nevada Revised Statute § 207.190 claim.
- Plaintiff's Stored Communications Act, 18 U.S.C. § 2701 claim.

**IT IS FURTHER RECOMMENDED** that the following claims be dismissed without leave to amend:

- Plaintiff's claims against the State of Nevada.
- Plaintiff's claims brought on A.J.'s behalf.
- Plaintiff's Fifth Amendment due process claim.
- Plaintiff's Eighth Amendment cruel and unusual punishment claim.
- Plaintiff's Electronic Communications Protection Act, 18 U.S.C. § 2510 claim.
- Plaintiff's Federal Trade Commission Act, 15 U.S.C. § 52 and § 54 claims.
- Plaintiff's Nevada Revised Statute § 179.045 claim.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE**

Pursuant to Local Rule IB 3-2 any objection to this Report and Recommendation must be in writing and filed with the Clerk of the Court within (14) days after service of this Notice.  The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time.  *Thomas v. Arn*, 474 U.S. 140, 142 (1985), *reh'g denied*, 474 U.S. 1111 (1986).  The Ninth Circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court.  *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

DATED: March 10, 2025

_____
DANIEL J. ALBREGTS
UNITED STATES MAGISTRATE JUDGE